## STATE v COLUCCI

Ohio Appeals, 2nd Dist, Clark Co

No 376. Decided April 27, 1938

Cole & Hodge, Springfield, for defendant-appellant.

Jerome Nevius, Prosecuting Attorney, Springfield, and Ben Goldman, Asst. Prosecuting Attorney, Springfield, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

The defendant was indicted, tried, convicted and sentenced for the offense of. rape with force upon one Katherine Cochenour, of the age of 15 years. The assignments of error are classified and set forth in the brief of appellant and we shall consider all of them, though not in the order as presented and argued.

. It is urged that the court erred in the admission of certain evidence tendered by the prosecution and in the exclusion of evidence proffered by the defendant. The first error in the exclusion of testimony relates to the cross-examination by the defendant of Doctor Henric, to whom the prosecuting witness, some six hours after the alleged assault, had been taken for physical examination, the result of which would reflect upon the question whether or not the prosecuting witness had been criminally assaulted. Doctor Henrie was an interne at the City Hospital of Springfield, having begun his service in that capacity on the day when the prosecuting witness was brought to the hospital for examination. He had testified in chief respecting the physical examination of the sexual parts of the prosecuting witness and the result thereof, a part of which examination consisted of taking from the vagina a specimen from which a smear was made on slides and which the doctor examined under a microscope and testified disclosed the presence of spermatoza. It appeared that the doctor had not retained the slides until the time of trial and they were not available at that time, nor had he submitted them to any other doctor for examination to confirm or refute his conclusion. On cross-examination counsel for the defense put the following questions and answers were permitted or refused, as set forth on page 61:

"Q. You took a course in forensic medicine?

A. Yes, sir.

Q. You knew the question of whether a man goes to the penitentiary was depending on your finding?

MR. NEVIUS: Objection.

COURT: Sustained.

Q. You knew that there would in all probability be a criminal trial, did you not?

MR. NEVIUS: Objection.

COURT: Overruled.

MR. NEVIUS: Exception.

A. Yes.

Q. Were you taught in your course of forensic medicine of the vital importance of preserving all evidence?

MR. NEVIUS: Objection.

COURT: Sustained.

MR. COLE: Exception."

Refusal to permit the answer to this last question is the first assigned error in the rejection of testimony. The court committed· no prejudicial error in refusing to permit this question to be answered. The answer was not so material to any issue before the jury as to affect the defense. The court was well within its discretion in refusing to accept the answer upon the theory that it was too remote and likewise it would have been within the proper discretion to have admitted it. It is one of those questions which are frequently found in transcripts of testimony, the ruling upon which is clearly within the latitude extended to a trial judge.

The next error assigned is admission of the evidence of Doctor Boesel concerning his speculation as to how long a vaginal inflammation might last. On pages 78-79 of the record the Doctor was testifying as to the result of his physical examination of the vagina of the prosecuting witness and particularly with reference to a ruptured hymen.

At page 78 of the record:

"2. Doctor I will ask you, did you notice any redness about the vagina?

A. I did not.

Q. I will ask you if there had been redness there on June 30, 1936, would it still have been there necessarily at the time of your examination?

MR. COLE: Objection.

COURT: Overruled.

MR. COLE: Exception.

A. That would depend upon the cause. I can't answer that 'Yes' or 'No;' it might and might not have been. Shall I explain what I mean by that?.

Q. Yes.

A. An active inflammation or infection probably would have shown redness there, just a tear without infection there would have been time enough to have healed over.

Q. By that you mean there would have to be pus?

MR. COLE: Objection. Leading.

COURT: Objection sustained.

Q. What do you mean by infection, Doctor?

A. There are a number of infections present in the normal vaginal secretion. Those types of infection as a general rule are not severe enough to produce it In other words the tissue could have produced minute changes, but if there are no active gonorrhea or pus infection it would show redness if it hadn't healed over by that time.

Q. Doctor, would that show if there was an absence of such infection?

MR. COLE: Objection.

COURT: He may answer.

MR. COLE: Exception.

A. Would that show?

Q. Inflammation or redness?

A You mean at that time?

Q. Yes.

A. The absence of infection would not show at that time, no.

Q. Doctor, I will ask you, from your examination of Katherine Cochenour, could you determine whether or not it was possible for a douche point to be inserted without rupturing the hymen?

MR. COLE: Objection.

COURT: I am of the opinion it is out of order.

MR. NEVIUS: We will withdraw it.

Q. Doctor, I will ask you, what is the hymen?

A. The hymen is a thin membrane which encircles the orifice or opening of the vagina right practically at the entrance, usually composed of mucous membrane and sometimes fibrous tissue which makes it tight and hard usually. The ordinary term for the hymen is known to the laity as the maiden head.

MR. COLE: I don't think this is responsive.

Q. DOCTOR, I will ask you if there are different types of hymen?

A. Yes."

We have set forth all of the questions and answers, objections and rulings found on pages 78 and 79 and are satisfied that they all come clearly within the ██ scope of the proper testimony by a physician who had made examination of the parts to which the interrogatories were directed.

The next error is the admission of the entire testimony of Mr. Abe Gardner (170-173) and cross-examination of Mr. Colucci (133-134) as to his refusal to submit to a medical examination. We have examined the testimony of Abe Gardner in its entirety and find but one ruling to which any objection could properly be interposed. That was at page 172:

"Q. Did he (referring to defendant) give any reason as to why he did not want to submit to that examination?

A. No, his answers to all questions were evasive."

To this answer objection was made. This answer was but a mere conclusion of the witness and should properly ██ have been stricken, but in view of all the testimony it could not have been prejudicial.

Immediately after the answer objected to, Mr. Gardner answered that the defendant gave no reason as to why he did not want to submit to a physical examination, which was in rebuttal of the testimony of defendant that his reason, which he had stated to Mr. Gardner and others present, was that he did not have counsel to represent him and that he did not want to act without such advice.

At page 133 the prosecution asked the defendant:

"Q. I will ask you, Mr. Collucci, if you refused an examination at the hospital?

MR. COLE: Objection.

COURT: Overruled.

MR. COLE: Exception."

The question was withdrawn and at page 134 these questions were put:

"Q. Mr. Colucci, did you or did you not refuse to be examined at the City Hospital in order to compare your semen with the semen found in Katherine Cochenour?

MR. COLE: Objection.

COURT: Overruled.

MR. COLE: Exception.

A. Mr. Gardner asked me to submit to this examination as described by Mr. Nevius, saying that I didn't have to if I didn't want to, but asked me if I wished to submit to it.

Q. What did you say?"

This question was answered. It should be noted that this testimony was not offered until after the defendant had taken the stand and testified in his own behalf. Having thus waived his privilege to refuse to testify and having been interrogated on the subject matter of his cross-examination, it was proper for the ██ State to offer any relevant testimony tending to rebut his own statements. In this situation it was proper for the state to interrogate the defendant as to his statements when he declined to submit to a physical ██ cal examination. By taking the stand he had waived any right to the protection which might have been accorded him had he elected not to testify.

In the cited case of Geiger v State, 70. Oh St 418, the statements of the defendant's son made in the presence of his father, indicating the father's guilt, to which he made no reply, were offered in chief by the State as in the nature of a confession by silence. The difference is obvious between the admission of this testimony and that of Mr. Gardner in the instant case on rebuttal.

"When the defendant offers himself as a witness and testifies in his own behalf, he thereby subjects himself to the same rules, and may be called on to submit to the same tests as to his credibility as may legally be applied to other witnesses." Hanoff v State, 37 Oh St 178.

At page 162, Doctor Anzinger, who was testifying for the defendant, and after a question which included what examination Doctor Henrie had made of the prosecuting witness and the nature of his experiment and the conclusion reached, was asked: "What, in your opinion would be the accuracy of such a test?" The court refused to permit this question to be answered upon the theory that it was permitting one witness to pass upon the testimony of another witness. The court did, however, permit an interrogatory to be put in the form of a hypothetical question and it was then answered. We see no substantial difference in the question as propounded to which objection was sustained and the question as put and permitted to be answered.

We find no prejudicial error in the admission of the answers of Doctor Anzinger to the hypothetical questions of the prosecution on cross-examination as found on pages 167-168 of the record. The testimony of Dr. Boesel, as found on pages 174-175-176, it is urged should not have been admitted because improper rebuttal. This line of questioning, in our judgment, was rebuttal of the expert testimony first brought onto the record by Doctor Anzinger for the defense, respecting the probability that Doctor Henrie might have mistaken trichomonas vaginalis for spermatazoa and it is tendered to show that there was such a differentiation between these forms of germs as to size, confirmation and appearance as that an expert should not have mistaken one for the other.

We have read this record with care touching the admissibility and rejection of testimony and find that it is free from any prejudicial error in either respect.

The appellant asserts that the medical testimony offered by the state did not satisfactorily establish that the prosecuting witness had been assaulted. This testimony alone could not have established the assault but supported the claim of the State both as to the assault and sexual intercourse, but there was enough testimony if the jury believed it which was within its province to do, to establish the offense both substantively and by corroboration, independent of any medical testimony. However, Doctor Henrie qualified as an expert. The quality of his testimony was for the jury. All the elements which, from the standpoint of the defense tended to weaken the effectiveness of his diagnosis, were presented and urged to the jury. The only part of his testimony which did not relate to deductions which he could draw from a physical examination was that which pertained to the presence of spermatazoa in the vagina. The method and manner of his taking of the specimen and making the smear and examining it under the microscope, together with the result thereof, was definitely set forth by Doctor Henrie and he was positive of the truth of his deductions. The defense had the benefit of his inexperience as it affected the results of his test and his failure to keep the slides which would have permitted an examination thereof by other experts for a comparison or differentiation of the results of their examinations.

Doctor Henrie also testified to the ruptured hymen of the prosecuting witness and the presence of lacerations with fresh blood, which could not be accounted for upon any other theory than that they had been caused by the entrance of some foreign object into the vagina and if the sper-

matazoa were present, as testified, no other conclusion could be reached than that the vagina had been entered by the male sexual organ. Doctor Henrie was corroborated in many of his findings by the testimony of Doctor Boesel. Doctor Anzinger likewise said that if the rupture of the hymen had been produced by the use of douches in treatment of a prior affection suffered by the prosecuting witness the healing would be evidenced by scar tissue, which was not found. In conjunction with the statements of the prosecuting witness and the physical facts appearing, the testimony of the doctors offered by the State, if accepted, was very strong corroborative evidence in behalf of the prosecution.

It is claimed that the verdict and judgment are against the manifest weight of the evidence. In this view we cannot concur. In cases such as this it is not to be expected that there will be any eye witness to the act of sexual intercourse other than those actually engaged therein. So that as a means of corroboration or contradiction of the testimony of the prosecuting witness it has been the policy of the law to permit others to repeat her declarations made to them shortly after the time of the alleged assault in respect thereof. So in this case the prosecuting witness at the first opportunity told her employer, Mrs. Smith, of the assault upon her by the defendant. The declarations made to Mrs. Smith, as told by her on the witness stand, were in all essential particulars the same as testified by the prosecuting witness. She also made a statement to Beatrice Zimmerman, social worker for the Clark County Childrens' Home, from which institution the prosecuting witness had come to the home of Mrs. Smith. Likewise her declarations testified by Miss Zimmerman, were in most particulars the same as her testimony before the jury. Of course, variance, if any, may as well have been attributed to faulty memory of the witness to whom Miss Cochenour made her statement as to misstatement of the prosecuting witness.

It is urged that the prosecuting witness did not react to the assault as a normal person would have done; that she did not make an outcry; that she slept thereafter; that she did not show signs of perturbation, which might be expected to follow such an attack. To account for her failure to scream she told Mrs. Smtih, and testified, that she was fearful for her own life and that of the Smith baby, who was present in the room where it was testified

the assault took place and for whom the prosecuting witness was responsible. Mrs. Smith says that the prosecuting witness was excited, that her eyes were red and swollen, evidence of having wept, that she was in pain and walked with difficulty and that her parts were very sore.

No reason whatever appears from this record which would have actuated the prosecuting witness in charging the defendant with the assault upon her had it not occurred. That she was assaulted seems certain upon this record. That the defendant at the time the assault is fixed was alone in his yard immediately adjacent to the home where the prosecuting witness was living is not disputed. He had the opportunity to do that which the prosecuting witness testifies he did.

It is true that the defendant prior to the act in question sustained an especially fine reputation, both for chastity and for truth and veracity. Likewise he had reached exceptional scholastic attainments. His denial was before the jury. together with the benefit of his standing and reputation in the community. The court very carefully charged the jury that he was entitled to the benefit of a good character.

"The weight which is to be given to evidence of good character is a question for the jury under all circumstances involved." Stewart v State, 22 Oh St 477.

"Proof of good character is not a defense." 8 R.C.L. 208.

The court also very definitely and properly charged the jury that the burden was upon the State to establish the guilt of the defendant by proof beyond a reasonable doubt. The jury having by its verdict determined that the defendant was guilty, the rule which the trial court was required to follow in passing upon the motion for new trial and which controls our action in considering the claim that the verdict and judgment are against the manifest weight of the evidence is established in Ohio upon the statute and judicial pronouncement. As early as 1861 the Supreme Court, in Breese v State of Ohio, 12 Oh St 146, fourth syllabus, said:

"A judgment will not be reversed because the verdict is contrary to the evidence. unless it is manifestly so, and the reviewing court will always hesitate to do so where

the doubts of its propriety arise out of a conflict in oral testimony."

Many courts have followed this early decision and in 1929 the Legislature enacted §13449-5 GC, which in part provides:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court * * * for the admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; **nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial.**"

If there was any passion or prejudice exhibited during the trial of the case it is not to be detected from the record. The cause was ethically tried. The prosecution did not resort to any unfair advantage calculated to inflame the jury. The defense was capably represented by eminent counsel. The cause was fairly presented to the jury by the court and nothing appears in this record to indicate that the jury was swayed by any other purpose than its obligation to do its full duty toward the State and the defendant. The record presents a clean-cut issue as between the truth of the case as developed by the State and the denial as asserted by the defendant. The verdict and judgment cannot be said to be manifestly against the weight of the evidence.

The cross-examination of the defendant by the prosecuting attorney is assigned as one of the grounds of error, but an examination of the record discloses that from pages 120 to 133, during which the questions were propounded and answers made concerning which objection is now offered, there was no objection whatever interposed by counsel for the defense. In this situation the question of the propriety of the examination is not properly before the court unless so improper as to require the trial judge to act of his own motion, which does not appear.

There is one further error assigned, namely, that the court should have incorporated in its general charge as requested by counsel for defendant at the conclusion of the charge:

"That the degree of physical resistance which the jury must find Katherine Cocherour employed on the occasion of the attack, if such was made, is that she used every physical means within her power to resist penetration, and that she persisted in such resistance until penetration was consummated."

Supporting this charge we are cited to eight cases, all of which are from states other than Ohio.

The court charged the jury that:

"You are instructed that the allegation of force is proved by evidence which shows beyond a reasonable doubt that the person of the complaining witness was violated and her resistence overcome by physical force, or that her will was overcome by fear or duress. In either case the crime would be complete though she ceased all resistance before the act was actually consummated. Where a female submits to sexual intercourse through fear of personal violence, such intercourse is not with her consent, and the crime is complete. The woman is bound to resist if manual resistance is possible, or unless such resistance is overcome by fear or by threats. If she remains passive, her passiveness is to be taken as consent."

The charge as given is substantially found in **State v McCann, 5 O.L.R. 388**. It is sound and certainly was not unfavorable to the defendant in view of the discussion of the question as found in **Radke v State, 107 Oh St 399**.

"The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; * * * the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength." **State v Labus, 102 Oh St 26**.

No error appearing in this record to the prejudice of defendant, the judgment will be affirmed.

BARNES, PJ, concurs.
GEIGER, J, dissents.

## DISSENTING OPINION

By GEIGER, J.

I am unable to agree with the judgment

of my associates for the reason that in my opinion the evidence presented does not justify the verdict of the jury.